UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **ORIEL KERR,** *Plaintiff* § § § | |
| v. § § | Case No. 1:24-cv-00722-DAE |
| **SMOKEBALL INC.,** *Defendant* § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE DAVID A. EZRA
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Partial Motion to Dismiss (Dkt. 9), filed September 23, 2024; Plaintiff's Response (Dkt. 11), filed October 7, 2024; and Defendant's Reply (Dkt. 14), filed October 14, 2024. By Text Order entered February 12, 2025, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.  Background

Plaintiff Oriel Kerr, a resident of Kyle, Texas, brings this employment discrimination suit against her former employer, Defendant Smokeball Inc., a legal software corporation in Chicago, Illinois. She makes the following allegations in her Complaint (Dkt. 1):

Kerr worked remotely as an account manager for Smokeball from February 28, 2022 through July 18, 2023. *Id.* ¶¶ 3, 7. From "the beginning of her employment," she "experienced racial discrimination and harassment at the hands of her managers." *Id.* ¶ 8. As the only African American, Kerr was "frequently skipped over" on conference calls, and her ideas and projects were

1

"often dismissed or blocked by leadership." *Id.* ¶ 9. Kerr's white counterparts were paid more despite having less experience. *Id.* One of her managers, Alison Lupel, "frequently bullied and harassed Ms. Kerr, yelling at her during meetings and utilizing threatening body language/behavior over videoconference sessions." *Id.* ¶ 10. Kerr complained to Human Resources about these incidents, "but no action was taken." *Id.* ¶ 14. Lupel's bullying behavior continued and Kerr's employment was terminated "after she went to HR with her complaints." *Id.* ¶ 54.

Kerr also alleges that she is disabled due to certain health issues, including a herniated disc, rheumatoid arthritis, Hashimoto's disease, depression, and social anxiety. *Id.* ¶¶ 15-32. Kerr alleges that Smokeball failed to accommodate her disabilities.

On August 31, 2023, Kerr filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division, alleging that she was retaliated and discriminated against because of her race, in violation of Title VII of the Civil Rights Act. Dkt. 9-1 ("EEOC Charge"). Kerr received her right to sue letter from the Equal Employment Opportunity Commission ("EEOC") on April 18, 2024. Dkt. 1 ¶¶ 56-57.

Kerr filed this suit on June 28, 2024, asserting: (1) disability discrimination and retaliation under the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008 (collectively, "ADA"); (2) racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964; (3) racial discrimination and retaliation, in violation of 42 U.S.C. 1981; (4) retaliation and unlawful interference with the exercise of rights under the Family and Medical Leave Act ("FMLA"); (5) discrimination, retaliation, and wrongful termination under the Texas Commission on Human Rights Act ("TCHRA"); and (6) intentional infliction of emotional distress ("IIED") under Texas law. Smokehouse moves to dismiss Kerr's ADA, TCHRA, and IIED claims under Rule 12(b)(6).

## II.     Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.     Analysis

Smokehouse argues that Kerr failed to exhaust her administrative remedies as to her ADA and TCHRA claims, and that her common law IIED claim is barred under federal and Texas law. Kerr concedes that her IIED claim is preempted, but disputes that she failed to exhaust her administrative remedies as to her disability claims.

A.   **ADA Claim**

In Count I of her Complaint, Kerr alleges that she

> is a "qualified individual with a disability" as that term is defined in the ADA . . . because at all times relevant hereto, she had a physical impairment that substantially limited/limits one or more major life activities or because she had a record of such impairment, including all the injuries referenced above as well as resulting medical complications.

Dkt. 1 ¶ 59. Kerr also alleges that Smokeball "regarded" her as disabled. *Id.* ¶ 60. Kerr alleges that she could have performed her job's essential functions with a reasonable accommodation, but that Smokeball failed to grant her "any reasonable accommodation, constitut[ing] unlawful discrimination and retaliation against Ms. Kerr because of her disability and/or perceived disability." *Id.* ¶¶ 62-63.

Smokeball argues that Kerr failed to exhaust her administrative remedies as to her ADA claims because she never asserted disability discrimination or failure to accommodate in her EEOC Charge. Smokeball contends that other than referring to herself as "an African American, disabled female," Dkt. 9-1 at 2, her EEOC Charge focuses exclusively on race discrimination and racial harassment.

Before a plaintiff may bring suit in federal court under either Title VII or the ADA, she must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021).

> One of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them." In order to adequately notify employers about the nature of the charges against them, employees must inform their employers from the outset about their claims of discrimination.

*Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)). Courts "should not condone lawsuits that exceed the scope of EEOC

4

exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008).

Competing policies underlie judicial interpretation of the exhaustion requirement:

> On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." On the other hand, the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." To reconcile these policies, this court construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." We use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission."

*Id.* (citations omitted). While a plaintiff need not "check a certain box or recite a specific incantation to exhaust his or her administrative remedies," *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006), a suit can include only those allegations that are "like or related to those allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission." *Davenport v. Edward D. Jones & Co.*, L.P., 891 F.3d 162, 167 (5th Cir. 2018) (cleaned up). Because failure to exhaust administrative remedies is a non-jurisdictional affirmative defense, the burden is on the defendant to prove that the plaintiff has not satisfied the administrative exhaustion requirement. *Lopez v. AT&T Mobility Servs. LLC*, No. EP-24-CV-180-KC, --- F. Supp. 3d ----, 2025 WL 600120, at *6 (W.D. Tex. Feb. 25, 2025).

Kerr's EEOC Charge states in full:

> I Oriel Kerr, an African American, disabled female, was terminated from my position as an Account Manager in the client success department of the defendants Smokeball, Inc.s, Illinois office on July 18, 2023, after reporting continued incidents of racial

>harassment and bullying by leadership and my manager Alison Lupel to HR director Andrew Zuckerman. I had reported previous incidents of racial discrimination and harassment by leadership shortly after starting in February of 2022. Smokeball chose to fire me based on reasons that do not exist in Smokeballs employee handbook. Krista Lugo and Alison Lupel who became my manager in 3/2023 prevented me from excelling in my role by blocking numerous projects, paying me lower than my white peers despite having more experience, and preventing me from attending meetings pertinent to my job functions. Alison bullied me and in one meeting 7/14th became volatile and demeaning to where I feared being around her. When I again brought this to the attention of HRs director Andrew Zuckerman, he and leadership Ruchie Chadha, chose to terminate me based on policies that do not exist in the employment handbook and, based on being black. It is important to note, I have other former black colleagues from Smokeball who faced the same racial harassment, discrimination and toxic work environment and are willing to give statements. I have a 79-page document outlining racial bias, illegal activity I brought to leaderships attention that they failed to correct on more than one occasion. [sic]

Dkt. 9-1 at 2.

While Kerr describes herself as "an African American, disabled female," she asserts only race discrimination and retaliation in the EEOC Charge, not disability discrimination. *See id.* at 2 (stating that she was discriminated against based on "Race, Retaliation"); *id.* at 3 ("I believe I was discriminated against because of my race (Black) and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended."). Kerr asserts no allegations of disability discrimination or failure to accommodate in the EEOC Charge.

Courts in the Fifth Circuit have held that disability discrimination claims cannot reasonably be expected to grow out of other forms of alleged discrimination such as race, sex, or age when the plaintiff fails to allege disability discrimination in the charge. *Stewart v. Smitty's Supply, Inc.*, No. 18-10058, 2020 WL 433362, at *7 (E.D. La. Jan. 28, 2020); *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816 (E.D. Tex. 2014) (holding that employee failed to exhaust his administrative remedies where EEOC charge alleged solely race discrimination and made no

mention of employer's alleged failure to promote him due to alleged disability), *aff'd*, 640 F. App'x 393 (5th Cir. 2016); *Huff v. DRE Mgmt., Inc.*, No. 3:12-CV-0414-B, 2012 WL 3072389, at *4 (N.D. Tex. July 30, 2012). Because Kerr did not specify her disabilities, allege that she was discriminated against because of a disability, or allege that Smokehouse failed to accommodate a disability in her EEOC Charge, she failed to administratively exhaust her disability claims.

Kerr does not dispute that she did not allege disability discrimination or failure to accommodate in her EEOC Charge, but argues that a 79-page document she submitted to the EEOC eleven days after her EEOC Charge satisfies the exhaustion requirement. Kerr points to two pages in the "79-page document outlining racial bias," Dkt. 9-1 at 2, referencing her alleged autoimmune and social anxiety disorders, as well as her supervisor's requirement that Kerr have her camera on during meetings. Dkt. 11 at 5-6. But she presents no evidence that the EEOC considered this document and investigated a claim for disability discrimination. Kerr also never officially amended her EEOC Charge to add a disability discrimination claim.[1] Smokeball was never provided with a copy of the 79-page document and thus was not put on notice of a disability discrimination claim. Dkt. 14 at 5.

Because Kerr did not allege disability discrimination in her EEOC Charge and identifies no evidence that Smokehouse received notice of those claims during the EEOC investigation, she has not exhausted her administrative remedies as to her disability discrimination claims. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021).

---

[1] An employee may amend her original charge and the charge may relate back to the date it was first received when "the employee already included sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination." *Manning*, 332 F.3d at 879; *see also Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985) (holding that plaintiff could add a claim of gender discrimination but not a claim of sexual harassment because the facts in her original charge supported only the former claim).

### B. Texas Commission on Human Rights Act Claim

Smokehouse also argues that the TCHRA claim Kerr asserts in Count V should be dismissed for failure to exhaust because it is "based exclusively on <u>disability</u> in violation of Texas state law." Dkt. 9 at 4 n.3. While Smokehouse is correct that Kerr asserts in Count V that she "was intentionally discriminated against on the basis of her disability," Dkt. 1 ¶ 88, she also asserts that her TCHRA claim "arises out of the same facts, events, and circumstances as in Count II." *Id.* ¶ 85. Count II asserts race discrimination and retaliation under Title VII. *Id.* ¶ 66. Therefore, Kerr asserts both race and disability discrimination in Count V. While the Court agrees that Kerr's disability claims under the TCHRA should be dismissed for failure to exhaust, as explained above, Kerr has exhausted her race discrimination claims. This Magistrate Judge recommends that Smokehouse's motion to dismiss Kerr's race discrimination and retaliation claims under the TCHRA be denied.

### C. Intentional Infliction of Emotional Distress Claim

In addition to her statutory employment discrimination claims, Kerr also asserts a common law IIED claim under Texas law against Smokehouse. Kerr alleges that Smokehouse's discriminatory employment actions described in her Complaint constitute "Smokeball Inc. acting intentionally and recklessly in an extreme and outrageous fashion and causing Ms. Kerr emotional distress, which remains severe." Dkt. 1 ¶ 99. She seeks $3 million in actual damages, $1 million in future damages, and more than $1 million in punitive damages for this alleged conduct.

> Under Texas law, a plaintiff bringing an IIED claim must demonstrate that the defendant intentionally or recklessly engaged in extreme or outrageous conduct that resulted in severe emotional distress. But not all such conduct is actionable under IIED—the plaintiff must also demonstrate that there is no alternative cause of action available to address the alleged misconduct.

*Stelly v. Duriso*, 982 F.3d 403, 407-08 (5th Cir. 2020). That is because IIED is a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a

8

defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ("[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies. Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill."). A plaintiff cannot recover damages on an IIED claim "when the Legislature has created a statutory right to seek emotional damages for the same actions that form the basis of the intentional-infliction claim." *Hoffmann-La Roche*, 144 S.W.3d at 445 (finding that employee who brought sexual harassment claim under TCHRA could not bring separate IIED claim to circumvent statutory cap on nonpecuniary damages because the "gravamen" of the IIED claim was sexual harassment).

    Federal courts applying Texas law have held that a plaintiff is barred from asserting an IIED claim based on the same actions that support the plaintiff's statutory discrimination claim under federal or Texas law. *See Stelly*, 982 F.3d at 409 (finding that the availability of statutory remedies under Title VII foreclosed plaintiff's IIED claim based on the same conduct); *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646, 668 (W.D. Tex. 2013) ("Where a common-law IIED claim relies upon the very same facts cited by Plaintiff in support of his claim under the ADA, the IIED claim is barred as a matter of Texas law.") (citation omitted); *Stewart v. Houston Lighting & Power Co.*, 998 F. Supp. 746, 754 n.8 (S.D. Tex. 1998) ("When a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up her Title VII claim, the former is preempted."). Because Kerr's IIED claim is based on the same set of facts that support her statutory discrimination claims, her IIED claim is barred. *See* Dkt 1 ¶¶ 58-99. As stated, Kerr does not dispute that her IIED claim is barred and should be dismissed. Dkt. 11 at 1 n.1.

## IV.    Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant's Partial Motion to Dismiss (Dkt. 9). The Court **RECOMMENDS** that the District Court **GRANT** the Motion and **DISMISS** Plaintiff's (1) disability discrimination and retaliation claims under the ADA and ADAAA asserted in Count I; (2) disability discrimination and related claims under the TCHRA asserted in Count V; and (3) IIED claim asserted in Count VI. The Court **RECOMMENDS** that the District Court **DENY** the Motion as to Plaintiff's race discrimination and related claims under the TCHRA asserted in Count V.

If the District Court adopts this recommendation, Plaintiff's claims under Count II, Count III, Count IV, and her race discrimination and related retaliation claims under Count V survive.

It is **ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and return it to the Honorable David A. Ezra.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C.

§ 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 13, 2025.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE